# United States Court of Appeals
## For the First Circuit

No. 02-1824

UNITED STATES,

Appellee,

v.

THOMAS FRAZIER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Selya and Lipez, Circuit Judges,
and Ponsor, U.S. District Judge.[*]

Bruce Green for appellant.

Kevin P. McGrath, Assistant United States Attorney, with whom Heidi E. Breiger, Assistant United States Attorney, and Michael J. Sullivan, United States Attorney, were on brief, for appellee.

August 18, 2003

---

[*]Of the United States District Court for the District of Massachusetts, sitting by designation.

**LIPEZ, <u>Circuit Judge</u>.** In securing a plea agreement, the government will frequently promise to forego advocacy of an upward departure at a defendant's sentencing. The government made such a promise in this case. To resolve this appeal, we must determine whether the government, consistent with that promise, could then inform a panel of this court during a prior appeal that the district court "should be free" on resentencing to upwardly depart <u>sua sponte</u> if the district court determined that the defendant's criminal history category under the applicable sentencing guideline, <u>see</u> U.S.S.G. § 4A1.3, under-represented the seriousness of his criminal history. The line between "information" and "advocacy" can be a fine one. Although the government's clumsily-composed brief in the prior appeal was regrettable, we conclude that the government did not cross the line. We therefore affirm the sentence imposed by the district court.

## I.

In September 1997, defendant-appellant Thomas Frazier was indicted on two counts of distributing cocaine base, <u>see</u> 21 U.S.C. § 841(a)(1) (2002), and one count of conspiracy to distribute cocaine base, <u>see</u> <u>id.</u> § 846. Pursuant to a written plea agreement executed in May 1999, Frazier agreed to plead guilty to one substantive count specifying a transaction that took place on July 17, 1997. In exchange for Frazier's guilty plea, the government agreed to dismiss the conspiracy charge and the remaining

-2-

substantive count.  As for sentencing, the plea agreement provided

as follows:

> The U.S. Attorney and Defendant agree that there is no basis for a departure from the sentencing range established by the United States Sentencing Guidelines [except that Defendant reserves the right to argue for a downward departure based upon his family circumstances].[1] Accordingly, neither the U.S. Attorney nor Defendant will seek a departure on any ground from the Sentencing Guidelines. The U.S. Attorney expressly reserves the right to seek an upward departure pursuant to U.S.S.G. § 4A1.3 should any of Defendant's prior state convictions be vacated subsequent to the execution of this Agreement.

The agreement also reserved the U.S. Attorney's right to "argue the

correctness of the Defendant's sentence and the manner in which the

District Court determines it," should Frazier pursue any appeal.

A subsequent Pre-Sentence Report ("PSR") prepared by the

U.S. Probation Office revealed that Frazier was a leader in a

Worcester, Massachusetts, drug gang called the Vice Lords, and that

he had a prior August 1995 drug trafficking conviction and an

August 1997 assault and battery conviction.  As a result, at

Frazier's November 1997 sentencing hearing, and over his objection,

the district court determined that Frazier was a "career offender,"

see U.S.S.G. § 4B1.1, and, accordingly, assigned to him a criminal

history category ("CHC") of VI.  Since the court determined that

Frazier was a career offender with the highest possible criminal

---

[1] The bracketed material was inserted by hand into the typewritten agreement and initialed by all parties.

history category, it did not need to determine whether Frazier's CHC under-represented the seriousness of his criminal history. Also as a result of the career offender designation, the district court did not need to consider Frazier's objection to the PSR's role-in-the-offense calculation, see U.S.S.G. § 3B1.1, since it would not have affected the sentence in any event.

Frazier appealed his sentence, arguing that the district court erred in its career offender determination, and asking us to reverse that determination and remand the case "for resentencing by the District Court after consideration of the Defendant's Role in the Offense objection." In response, the government filed a motion for remand, conceding that the district court had erred in its career offender calculation. Frazier's August 1997 assault and battery conviction — upon which the career offender calculation was partially based — occurred after the July 1997 offense for which Frazier was being sentenced, and therefore should not have been considered. The government's brief in support of its motion for remand contained the following text at the end:

> Given that the erroneous determination of the defendant as a career offender impacted the defendant's GSR [guideline sentencing range], the case should be remanded for resentencing. As the defendant points out in his brief, at resentencing, the district court would need to resolve the defendant's objection to the PSR's role adjustment. ***On resentencing, moreover, the district court should be free to consider the applicability of U.S.S.G. § 4A1.3, which provides for upward departures when a sentencing court determines that the***

-4-

> **defendant's CHC under-represents the seriousness of the defendant's criminal history.**

The boldface and italicization in the above-quoted excerpt is as it appeared in the original. Frazier did not object at that time to the form or substance of the government's remand motion. Upon consideration of the parties' submissions, a prior panel of this court agreed that the district court had erred and issued an order on November 9, 2001, which stated:

> We therefore <u>allow</u> the government's motion, <u>vacate</u> the judgment [of the district court] and <u>remand</u> the case for resentencing. Upon remand, the district court should resolve the defendant's objection to the two-level adjustment for his role in the offense. We take no view whether the circumstances of this case might warrant an upward departure under [U.S.S.G.] § 4A1.3.

Frazier did not seek modification of this order.

On May 3, 2002, the district court convened a resentencing hearing in accordance with our mandate. In recalculating Frazier's CHC, the court concluded that Frazier had eight criminal history points, placing him in CHC IV. The court added:

> It is also appropriate for me to note, for the record, that the Mandate from the First Circuit Court of Appeals did call my attention, although it took no stand, on the possibility that this case might warrant an upward adjustment under Guideline 4A1.3.

The court then stated, prior to soliciting any comments from counsel, that it was "inclined" to depart upward and assign a CHC

-5-

of V because, in the court's view, there was reliable information in the PSR indicating that a CHC of IV inadequately reflected the seriousness of Frazier's criminal history.

The court then solicited comments from counsel. The Assistant United States Attorney's ("AUSA") immediate response was, "Your honor, I did not make that motion," but added that "I certainly would be happy to provide the Court with additional briefing in support of such a finding." Counsel for Frazier then addressed the court, stating that it would be a breach of the plea agreement for the government to advocate for an upward departure:

> I would be concerned if my sister actively provides information or a briefing in support of the Court's inclination mainly because the plea agreement that we have with the government says that it will not seek — and I assume that that means will not support — an upward departure in this case. So I would suggest that if that were to occur, that that would constitute a breach of the plea agreement.

Defense counsel also stated that he had not anticipated having to argue against an upward departure, and therefore requested a continuance to brief the issue. The court granted the request and set a briefing schedule. The AUSA then indicated that she would go back and check the plea agreement: "I will review it and certainly will take no action to breach an agreement we've already reached."

Three weeks after the hearing, Frazier filed in the district court a "Motion for Specific Performance of Plea Agreement's Terms and Memorandum in Opposition to Upward Departure

Pursuant to Section 4A1.3." In this filing, Frazier contended for the first time that the government had breached its plea agreement while the original sentence was under appeal: "While the government has not explicitly violated the plea agreement, it did perform an end run around it by arguing superfluously in its motion for remand that the district court could consider a 4A1.3 upward departure upon resentencing." In its response to Frazier's motion, the government stated that it would not advocate for a departure at resentencing. It also stated that its motion for remand "set out an accurate legal principle indicating for the Court of Appeals the limits of its mandate," and that this did not constitute a breach of the plea agreement.

At the continued resentencing hearing on May 28, 2002, the district court rejected Frazier's claim that the government had breached the plea agreement: "Simply the mention in [the government's] papers filed in the First Circuit Court of Appeals that 4A1.3 was applicable doesn't indicate to me that there has been any breach or any request by the government that I upwardly [depart]." The court therefore denied Frazier's motion for specific performance.

The district court then acted on its inclination to upwardly depart. For reasons detailed below, see Part IV.B, the district court determined that Frazier's criminal history category was under-represented by his otherwise applicable CHC of IV. The

court concluded that a CHC of V was appropriate, placing Frazier in a sentencing range of 120 to 150 months, rather than category IV's range of 100 to 125 months. The government made no recommendation as to sentence within that range, and the district court sentenced Frazier to a 138-month term of incarceration. This appeal ensued, with Frazier requesting that this case "be remanded for resentencing either by a different judge or for a sentence within the guideline range."

## II.

Frazier presses two arguments on appeal. First, he claims that the district court erred in rejecting his argument that the government breached the terms of the plea agreement. According to Frazier, the bold and italicized language contained in the government's motion for remand, if not an outright breach, was an impermissible "end run" around the substance of the plea agreement. In evaluating whether the government has breached a plea agreement, we employ differing standards of review depending upon the circumstances. In this case, the facts giving rise to the alleged breach are not in dispute. "Thus, we must determine only the legal question of whether the government's undisputed conduct breached the plea agreement, which we review de novo." United States v. Clark, 55 F.3d 9, 11 (1st Cir. 1995); see United States v. Doe, 233 F.3d 642, 644 (1st Cir. 2000) ("[W]hether [the government's]

conduct constituted a breach of the plea agreement is a question of law subject to plenary review.").

Next, assuming there was no breach, Frazier argues that the district court erred in its decision to upwardly depart pursuant to U.S.S.G. § 4A1.3. As explained in Part III.B, infra, the applicable standard of review has been changed in part through a recent legislative enactment. In the past, we would have deferred to the district court's determination regarding the adequacy of a defendant's CHC unless we could find no support for that conclusion in the record. United States v. Diaz-Martinez, 71 F.3d 946, 952 (1st Cir. 1995); see United States v. Campbell, 61 F.3d 976, 985 (1st Cir. 1995) ("We review the court's factual findings for clear error, and we give considerable deference to its 'judgment call' as to whether those facts warrant the departure."). However, with the passage of the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650 (2003), we must now undertake de novo review of that determination.

## III.

### A.  The Alleged Breach of the Plea Agreement

Over thirty years ago, the Supreme Court attested to the important role that plea agreements play in our criminal justice system:

> Disposition of charges after plea discussions
> is not only an essential part of the process

-9-

but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned.

Santobello v. New York, 404 U.S. 257, 261 (1971). While these (and other) important considerations provide incentives for all sides to engage in plea discussions, a defendant must ultimately waive fundamental constitutional rights as a result of entering into any plea agreement. Hence, "we hold prosecutors engaging in plea bargaining to 'the most meticulous standards of both promise and performance,'" United States v. Riggs, 287 F.3d 221, 224 (1st Cir. 2002) (quoting United States v. Velez Carrero, 77 F.3d 11, 11 (1st Cir. 1996)), and we are wary of government claims that the prosecution "technically" complied with the terms of the agreement when the net effect of the government's behavior undermines the "benefit of the bargain" upon which a defendant has relied. Our case law prohibits "not only explicit repudiation of the government's assurances, but must in the interests of fairness be read to forbid end-runs around them." United States v. Saxena, 229

F.3d 1, 6 (1st Cir. 2000); United States v. Canada, 960 F.2d 263, 269 (1st Cir. 1992).[2]

In determining whether the government has breached a plea agreement, "[w]e are guided . . . by general principles of contract law." Clark, 55 F.3d at 12; see United States v. Gonzales-Sanchez, 825 F.2d 572, 578 (1st Cir. 1987) ("Contractual principles apply insofar as they are relevant in determining what the government 'owes' the defendant."). As explained above, however, "[a] plea agreement is not an appropriate context for the Government to resort to a rigidly literal approach in the construction of language." United States v. Garcia, 698 F.2d 31, 37 (1st Cir. 1983) (quoting United States v. Bowler, 585 F.2d 851, 854 (7th Cir. 1978)). "Likewise, as in all contracts, plea agreements are accompanied by an implied obligation of good faith and fair dealing." United States v. Ahn, 231 F.3d 26, 35–36 (D.C. Cir. 2000) (internal quotation marks omitted). Moreover, pursuant to contract law, even an unintended breach is, nevertheless, still a breach. See United States v. Mercedes-Amparo, 980 F.2d 17, 19 n.3 (1st Cir. 1992) (stating that the fact that "breach was inadvertent

---

[2] We have previously indicated, however, that "minor deviations from the plea agreement will not mandate resentencing." Clark, 55 F.3d at 14 n.3. Only a deviation that "affect[s] the consideration due the defendant under the plea agreement" can be considered a breach that entitles a defendant to a remedy. Id.; see Panzardi-Alvarez v. United States, 879 F.2d 975, 986 (1st Cir. 1989) ("The government may not breach any term of a plea agreement which induced the defendant to plea guilty.") (emphasis added).

-11-

. . . does not lessen its impact") (quoting <u>Santobello</u>, 404 U.S. at 262).

Frazier claims that the government breached the terms of his plea agreement when, during the course of his prior appeal, the government inserted the following boldfaced and italicized language at the end of its remand motion:

> ***On resentencing, moreover, the district court should be free to consider the applicability of U.S.S.G. § 4A1.3, which provides for upward departures when a sentencing court determines that the defendant's CHC under-represents the seriousness of the defendant's criminal history.***

(original emphasis). As Frazier notes, the government chose to place only the foregoing in boldface and italics: "No other passage in the document received this treatment, just this one." Frazier argues that this excerpt, presented in that format, was an "end-run" around the following provision of his plea agreement:

> The U.S. Attorney and Defendant agree that there is no basis for a departure from the sentencing range established by the United States Sentencing Guidelines. . . . Accordingly, neither the U.S. Attorney nor Defendant will seek a departure on any ground from the Sentencing Guidelines.

According to Frazier, the language in the government's brief was "not just a mere statement of a truism, it is advocacy for a departure which the government explicitly agreed not to do." The government responds by calling its choice of words and formatting

-12-

"regrettable" in retrospect, but insists that there was no breach of the plea agreement.

Frazier relies on two cases in support of his claim — United States v. Clark, and United States v. Canada. In Clark, the defendant pleaded guilty in return for the government's promise that it would not oppose a three-level reduction for acceptance of responsibility. See Clark, 55 F.3d at 12. Nonetheless, the government effectively opposed such a reduction when, in its sentencing memorandum to the district court, it explicitly argued that the defendant did not appear to qualify for it. Id. In United States v. Canada, the government, as part of the plea agreement, agreed to recommend a 36-month sentence and to notify the court of the full nature and extent of the defendant's cooperation. Canada, 960 F.3d at 268. The government simply failed to do either. See id. at 269-70. In Frazier's case, however, the government did not fail to argue something that it explicitly promised to, nor did the government explicitly argue anything prohibited by the plea agreement.

The language at issue in the plea agreement was in a section entitled "Sentence Recommendation," and, by its own terms, only refers to sentencing. Neither at Frazier's initial sentencing, nor at his resentencing subsequent to his previous appeal, did the government ever recommend, move, argue, or otherwise support an upward departure. Indeed, the government

repeatedly stated in the district court that it was bound <u>not</u> to seek an upward departure. While the government did indicate at one point during Frazier's initial hearing after remand that it "would be happy" to provide briefing in support of an upward departure, the government ultimately retreated from that position once it actually took the time to re-examine the original plea agreement. Hence we conclude that the government did not technically violate the terms of the plea agreement.

However, as noted, the government cannot rely on mere technical compliance, and adherence to the terms of a plea agreement "requires more than lip service on a prosecutor's part." <u>Saxena</u>, 229 F.3d at 6. Instead, the prosecution's "overall conduct must be reasonably consistent" with the promises contained in a plea agreement. <u>Canada</u>, 960 F.2d at 269. At first blush, the government's behavior in this case seems dubious. Why would the government aver in the plea agreement that "there is no basis for a departure from the sentencing range established by the United States Sentencing Guidelines," but then include the language at issue in its appellate brief, unless the government concluded that there was a basis for — indeed, that it <u>sought</u> — an upward departure from the district court? Moreover, the government complicated matters by putting that very language, and that language alone, in boldfaced and italicized typeface. The government concedes the clumsiness of its conduct:

> The government acknowledges that, had it been mindful of the provision barring it from seeking an upward departure, it would have taken pains to ensure that the this [sic] Court's remand order did not affirmatively call the district court's attention to its option of upwardly departing. The government contends, however, that it was not barred by the plea agreement from seeking an accurate remand order in this case. Thus, while the government regrets that [sic] did not handle this situation with more care, it respectfully submits that its action did not rise to either an intentional or unintentional breach of the plea agreement warranting yet another remand.

In evaluating the government's explanation, we must be cognizant of the unusual procedural history of this case. After laying out a challenge to his career offender designation in his initial appellate brief, Frazier asked us to remand the case "for resentencing by the District Court after consideration of the Defendant's Role in the Offense objection." Seeing this language, the government was concerned that merely conceding the erroneous career offender designation without saying more might have led us to vacate the sentence and remand with unduly limiting directions, i.e., we might have issued a judgment saying that "the case is remanded for resentencing and consideration of the defendant's objection to the two-level adjustment for his role in the offense," and no more. Such a remand could have misled the district court into believing that it could not sua sponte consider an upward departure at resentencing. If this had happened, Frazier, in effect, would have gotten more than he had bargained for in his

-15-

plea agreement.[3]  Hence, according to the government, it was simply seeking "an accurate remand order" by including the contested language in its brief.

    We conclude that the government's concern about the phrasing of Frazier's remand request was warranted, and that its goal of seeking "an accurate remand order" was therefore within its rights under the plea agreement, as well as its obligation under the law.  The government is under a constant obligation to ensure the integrity of the proceedings at all levels, notwithstanding the terms of any plea agreement.  See Saxena, 229 F.3d at 6 ("The government's obligation to furnish relevant information . . . does not vanish merely because the government has a corollary obligation to honor commitments under a plea agreement.").  Seeing the potential for an unduly and unwittingly restrictive remand order from the court of appeals because of the unusual posture of this case, the government acted reasonably in alerting us to this possibility.  Although an alert with different phrasing and format might have produced a remand order from us that preserved the flexibility of the district court without a specific reference to an upward departure, we cannot equate the clumsiness of the government's alert with a breach of the plea agreement.  We were

---

    [3] Frazier acknowledged in the plea agreement that the sentencing court was not bound by the agreement's terms, and that the sentencing judge was free to disregard the recommendations of the parties as well as to upwardly depart from the Sentencing Guidelines.

-16-

not the sentencing court.  The government never advocated for an upward departure before the district court.  It furnished "the consideration due the defendant under the plea agreement." Clark, 55 F.3d at 14 n.3.  The government did nothing more than urge us to fashion a remand order that did not impose an unwarranted restriction on the sentencing court.  Therefore, we conclude that the contested language contained in the government's appellate brief did not constitute a breach of the plea agreement.

## B.  The Upward Departure

Frazier asserts that the sentencing court erred in upwardly departing under U.S.S.G. § 4A1.3, which provides as follows:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.

Id.  Frazier argues that his criminal history does not support such a departure.  He does not challenge, however, the factual findings upon which the district court premised the departure:

- that when Frazier was arrested in 1995 on drug charges, he was found in possession of three firearms and fifteen rounds of ammunition for which he was not charged;

- that he had committed two "very serious" separate assaults and batteries on a female friend for which he received only one sentence;

-17-

- while in custody for one of his assaults, he threatened to kill the victim if the charges were not dropped;

- when he was served with a restraining order, he told the police officer that he was going to "fuck[] up" the complainant and that the serving officer had "better be careful" when he was out on the street.

In assessing the significance of these findings, we must first take into account Congress's recent enactment of the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650 (2003). Section 401 of the PROTECT Act amends 18 U.S.C. § 3742 which governs our review of sentencing appeals. In United States v. Thurston, No. 02-1966 (1st Cir. Aug. 4, 2003), we held that the PROTECT Act applies to appeals pending as of its effective date, April 30, 2003. See id. slip op. at 45-47. While Thurston concerned an appeal by the government of an unacceptably low sentence, we see nothing in the language of the PROTECT Act which limits its applicability to downward departures. Section 401(d)(1) of the PROTECT Act refers to "review of departures," without distinguishing between the upward or downward varieties. We also note that § 401(d)(3) of the Act specifically contemplates situations in which "the sentence is too high" and "the sentence is too low." See id. (amending 18 U.S.C. § 3742(f)(2)). We therefore conclude that § 401(d) of the PROTECT Act applies to our review of upward as well as downward departures in cases pending on direct review as of April 30, 2003.

-18-

In light of the new law, we must now review de novo the question whether the underlying facts of this case warranted the district court's consideration of an upward departure.[4] See id. at 48. In enacting the PROTECT Act,

> Congress requires the courts of appeals to consider whether a sentence that departs from the applicable guideline range is based on a factor that:
>
> (i)   does not advance the objectives set forth in section 3553(a)(2); or
> (ii)  is not authorized under section 3553(b); or
> (iii) is not justified by the facts of the case[.]

Thurston, slip op. at 44 (quoting 18 U.S.C. § 3742(e)(3)(B)). Upon due consideration of these three criteria, we conclude that the upward departure was permissible and warranted under U.S.S.G. § 4A1.3, largely for the reasons articulated by the district court at sentencing and memorialized in the court's Statement of Reasons

---

[4] Under the PROTECT Act we continue to give due deference to the district court's determination on the degree of departure warranted by the facts. See id. § 401(d)(2) (amending 18 U.S.C. § 3742(e)).

appended to its Amended Judgment.[5]  We also conclude that the degree of departure was amply justified by the facts.

We write further to highlight only one other point. Frazier cites only two cases in support of his claim that the departure was unwarranted — United States v. Brewster, 127 F.3d 22 (1st Cir. 1997), and United States v. Ocasio, 914 F.2d 330 (1st Cir. 1990).  In both of these cases we affirmed upward departures for defendants whose factual histories, Frazier insists, were more egregious than his.  That may or may not be the case.  However, it was only a two-month quirk of timing that kept Frazier's prior criminal conduct from garnering him a career offender designation

---

[5] At the sentencing hearing, the district court noted Frazier was never charged in connection with weapons he possessed at the time of his arrest in 1995 on drug charges:

> That indicates to me a particular seriousness of this man's conduct and the likelihood of recidivism.  This is a very serious matter where we have not only involved a possession of a controlled substance with intent to distribute[,] but firearms, lots of ammunition, and fingerprints of the defendant on the firearm[s].

In its written findings, the court stated that the otherwise applicable CHC significantly under-represented the seriousness of Frazier's conduct and the likelihood that he would commit further crimes, because, "among other things,"

> 1) he committed two separate assaults and batteries in July 1997 for which he was sentenced together . . . 2) in connection with his 1995 drug conviction, he was involved with firearms . . . and 3) after his arrest in July, 1997[,] for two assaults, he threatened to kill the victim, tried to persuade her to drop the charges and even threatened the arresting officer.

-20-

and a CHC of VI.  Therefore, the district court's sentence was more than warranted.

          **AFFIRMED**.