# United States Court of Appeals
## For the First Circuit

No. 19-1992

UNITED STATES OF AMERICA,

Appellee,

v.

LUIS RIVERA-RUIZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Thompson, Howard, and Kayatta,
Circuit Judges.

José Luis Novas-Debién for appellant.
Alix Cohen, Assistant United States Attorney, with W. Stephen
Muldrow, United States Attorney, Mariana E. Bauzá-Almonte,
Assistant United States Attorney, Chief, Appellate Division, and
Francisco A. Besosa-Martínez, Assistant United States Attorney, on
brief, for appellee.

August 4, 2022

**HOWARD**, **Circuit Judge**.  Defendant-Appellant Luis Rivera-Ruiz, a former police officer with the Puerto Rico Police Department ("PRPD"), pleaded guilty to one count of racketeering in violation of 18 U.S.C. § 1962(c).  Rivera's conviction was based on his involvement with a corrupt group of PRPD officers who habitually stole money from the subjects of traffic stops and narcotics investigations, among other abuses.  Rivera now challenges the procedural and substantive reasonableness of his upwardly variant sentence of 60 months.  After careful review, we agree with Rivera that the sentencing court procedurally erred by basing his variant sentence, in part, upon several unadjudicated administrative complaints filed against Rivera during his career as an officer.  Accordingly, we vacate Rivera's sentence and remand for resentencing.

## I.   BACKGROUND[1]

In July 2018, a federal grand jury returned a 24-count indictment against Rivera and six other PRPD officers assigned to the Caguas Drug Unit ("CDU") between 2014 and 2018.  The CDU is a division within the PRPD responsible for investigating narcotics-related offenses, including drug and firearm trafficking,

---

[1]  Because Rivera pleaded guilty, we draw the relevant facts from the plea agreement, the change-of-plea colloquy, the unchallenged portions of the Presentence Investigation Report ("PSR"), and the sentencing hearing transcript.  United States v. Díaz-Rivera, 957 F.3d 20, 22 (1st Cir. 2020); United States v. Ubiles-Rosario, 867 F.3d 277, 280 n.2 (1st Cir. 2017).

gambling, prostitution, and other crimes. The first count of the indictment charged Rivera and his co-defendants with substantive violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), under 18 U.S.C. § 1962(c).[2] It alleged that these officers betrayed the legitimate purpose of the CDU in order to enrich themselves through extorting and robbing persons subject to detainments and traffic stops, and by falsifying affidavits and reports to conceal their misdeeds. More specifically, the RICO count alleged that, during this four-year timeframe, Rivera and his co-defendants knowingly and unlawfully participated directly and indirectly in the conduct of the CDU's affairs through a pattern of racketeering activity by committing 20 enumerated racketeering acts involving extortion, extortion conspiracy, and drug-trafficking crimes. Rivera was alleged to have directly participated in only two of these predicate acts involving extortion conspiracy occurring in 2016.[3]

---

[2] Rivera and the government both characterize Rivera's charge and guilty plea, in passing, as one for "RICO conspiracy." The record is clear, however, that Rivera was charged with and pleaded guilty to a *substantive* RICO violation under 18 U.S.C. § 1962(c), rather than RICO conspiracy under 18 U.S.C. § 1962(d). Although the district court made one similar reference to such a conspiracy at sentencing, it accurately described the charge to which Rivera pleaded guilty in imposing his sentence.

[3] The remaining counts charged Rivera's co-defendants with multiple acts of extortion, drug-trafficking conspiracy, and unlawful firearm possession.

In March 2019, Rivera pleaded guilty to the RICO count pursuant to a Rule 11(c)(1)(B) plea agreement, in which he admitted to participating directly and indirectly in the 20 underlying racketeering acts charged in the indictment. The plea agreement identified Rivera's base offense level as 19, under U.S.S.G. § 2E1.1(a)(1), and his adjusted offense level as 18, which was calculated by adding two levels for abuse of a position of trust, under § 3B1.3, and subtracting three levels for acceptance of responsibility, under § 3E1.1. The parties further stipulated that neither would seek any additional guideline adjustments and that they would each respectively request a sentence at the low and high ends of the 27-to-33-month Guideline Sentencing Range ("GSR"), which assumed a criminal history category of one. The parties further agreed to the accuracy of an attached and incorporated stipulation of facts, which provided that Rivera "violated the legitimate purposes of the CDU in order to enrich himself through illegal conduct, including extortion," and went on to detail Rivera's participation in the two acts of extortion in which he was directly implicated. Specifically, Rivera stipulated that he and other CDU officers took money from traffic-stop subjects on both occasions and failed to disclose the seizures in police reports. The stipulation of facts further provided that Rivera "acknowledges that he abused his position of trust at the CDU in a manner that significantly facilitated the commission of

- 4 -

the offense enumerated in [the RICO count]" and that the government would be able to prove him guilty if they proceeded to trial. It did not limit the facts the government would be able to prove, nor stipulate that Rivera was responsible for only the two predicate acts specifically identified.

Prior to sentencing, the probation officer prepared a PSR that calculated Rivera's GSR as 27-to-33 months, consistent with the plea agreement's calculations, and discussed Rivera's personal background and offense conduct. The offense conduct described in greater detail all 20 racketeering acts alleged in the indictment, including information gleaned from investigative reports and, as to the acts of extortion conspiracy, the approximate amount of money stolen. In the section discussing Rivera's employment record, the PSR detailed several awards and achievements Rivera had received during his 25-year career with the PRPD, such as awards for the "Medal of Courage" and "Agent of the Year." It also listed ten administrative "complaints/investigations" that were filed against Rivera between 1990 and 2015. Specifically, the PSR summarized "official documents from the Superintendencia Auxiliar en Responsabilidad Profesional" ("SARP"), which is a unit within the PRPD currently responsible for investigating and evaluating all allegations of improper conduct by PRPD employees, including administrative complaints. See P.R. Regs. Policia Reg. 8841 art. VI(40), XVIII

- 5 -

(Nov. 2016), repealing Reg. 6506 (Aug. 2002).[4] For each complaint, the PSR listed a complaint number, which identified the date it was filed, and briefly described the general nature of the accusation, i.e., "accident with official vehicle," "threats with duty firearm," "negligence," "assault," "use of excessive force," "immoral conduct," and four separate complaints for "illegal search."

For eight of these entries, including two of the "illegal search" complaints, the only other information provided was: "The circumstances of this complaint are unknown." For the third

---

[4] The sentencing record does not contain any other information pertaining to the SARP or the processes under which administrative complaints against PRPD officers were filed and adjudicated at the time Rivera was an officer. Pursuant to relevant Puerto Rico regulations in effect between 1993 and 2015, any citizen or agency official could file an administrative complaint. See P.R. Regs. Policia Reg. 6506 art. 4(A) (Aug. 2002), repealed by Reg. 8841 (Nov. 2016); P.R. Regs. Policia Reg. 3742 (Feb. 1989), repealed by Reg. 6506. Responsibility for considering such complaints was shared among various sub-units of the PRPD, including the Superintendencia Auxiliar de Integridad Pública ("SAIP"). See P.R. Regs. Policia Reg. 6506 art. 4(D), art. 5(A)-(D). The regulations further provided loose guidance for either an informal or formal investigation into the alleged conduct, and, among other things, empowered "any supervisor, unit director or commander . . . [to] take or recommend the disciplinary or corrective measures that he deems necessary." P.R. Regs. Policia Reg. 6506 art. 5(D)(1). Alternatively, the PRPD Superintendent was authorized to discipline the subjects of such complaints, upon a recommendation from the SAIP investigators or an independent determination. Id. art. 5(D)(2)-(3). No specific evidentiary standard was provided in these regulations. Id. art. 5(H)(3). Cf. P.R. Regs. Policia Reg. 8841 art. XI(D)(2)(b) (Nov. 2016) (adopting preponderance of the evidence standard for factual and violation findings).

"illegal search" complaint, filed in 2013, the PSR detailed that Rivera had admitted that he lied about the circumstances of a warrantless search, which was determined to be unlawful. It further provided that Rivera had been "determined to be at fault" and received a five-month suspension for violating several PRPD rules and policies, including "making false statements" and "misuse or abuse of authority, specifically, illegal or unreasonable search and seizures." For the fourth "illegal search" complaint, filed in 2015, the PSR stated that Rivera was found not responsible and exonerated. Rivera did not object to any portion of the PSR.

In September 2019, Rivera was sentenced to 60 months imprisonment. At his sentencing hearing, Rivera argued that a 27-month sentence was warranted because his offense of conviction was an "isolated" transgression, driven by "opportunistic" motives, in an otherwise "admirable career." In response to this argument and in support of its recommendation of a 33-month sentence, the government noted that, although it was "only able to charge [Rivera] with two racketeering acts," it had additional information undercutting Rivera's assertion that his "transgressions" as a police officer were limited to those two acts. Specifically, the government made three points. First, it noted that cooperating witnesses had said that Rivera "had stolen money on many occasions" and that local drug dealers were like

"his ATM[s]," i.e., "when [Rivera] wanted cash, he would come and rob them of their cash." It went on to identify two specific occasions in which Rivera had (i) accompanied another corrupt police officer to meet with a drug dealer for the purpose of disclosing the identity of an informant who was later murdered, and (ii) "struck an [arrestee] while he was handcuffed." The government prefaced its proffer by stating that it was merely addressing Rivera's arguments and that "nothing . . . should be interpreted as a request to have this Court sentence [Rivera] above . . . 33 months," later reiterating this same qualification. Rivera objected to the government's attempt to introduce these additional facts, which were not stipulated to in the plea agreement or provided during discovery. He did not, however, contend that the government's proffer itself constituted a breach of the plea agreement. The district court ultimately sustained the objection and stated three times that it would not consider these additional points.

In fixing Rivera's sentence, the sentencing court determined that the properly calculated 27-to-33 month GSR only "partially" considered the "nature and circumstances" of Rivera's offense and was not "adequate" in this case. In explaining its basis for the upward variance, the district court described at length the structure of the criminal enterprise and its means of operating, focusing on Rivera's acts of extortion conspiracy, but

also noting that he had admitted to participating directly and indirectly in the broader conduct of the enterprise. The court found that, by "lying blatantly to judges that were issuing warrants" and by submitting false reports, the enterprise made a "mockery of the judicial system" and "discredited" the PRPD.

The district court then considered the sentencing factors enumerated in 18 U.S.C. § 3553(a). Along with reciting some details of Rivera's personal and family history and noting his prior record of no convictions, the district court discussed the administrative complaints cited in the PSR:

> This defendant has some administrative complaints. And if you look at what were the administrative complaints for the year 2013, many of those involved and were related to illegal searches, which is consistent with the information of the charges. Though I'm not making any conclusory determinations as to -- this is just pointing to the resemblance of the conduct for which the government charges him being involved between 2014 up to the time of the charges that were filed. He has a complaint for threats with firearms, several counts of illegal searches as well at the administrative level.

Ultimately, the district court concluded that a 60-month incarcerative sentence was appropriate, based on "all of these factors" -- including the nature of Rivera's "blatant disregard for the law, his oath of office, and the integrity of the judicial system" and a finding that Rivera "allowed others to violate the law" during this time period. Following this explanation, Rivera objected to the sentence as procedurally unreasonable on several grounds, including the district court's purported "reli[ance] on

administrative actions that were disposed of in [Rivera's] favor." The district court responded that it had "not considered anything in which [Rivera] was adjudged not guilty," that it had only "alluded to complaints that had been filed," and that it had only mentioned that the complaints were "similar" to his charged conduct, particularly the 2013 illegal search complaint for which Rivera was suspended. The court further explained that it was "aware that there was no final status" as to the others, but that it found that the PSR "contains a clear report of what happened." This appeal followed.

## II.  DISCUSSION

### A.  Purported Breach of Plea Agreement

Rivera first contends that his sentence must be vacated because the government breached the plea agreement by mentioning at sentencing the three incidents that were not included in the stipulation of facts or provided during discovery. He argues that this proffer breached the government's "implicit promise . . . that [his] criminal acts were [limited to] those" contained in the plea agreement and amounted to "an end-run around [the agreement's] assurances." After careful review, we find no breach.

"Ordinarily, whether the government has breached its plea agreement with a defendant is a question of law and our review is plenary." United States v. Rivera-Rodríguez, 489 F.3d 48, 57

- 10 -

(1st Cir. 2007).  Where, as here, a "'defendant has knowledge of conduct ostensibly amounting to a breach of a plea agreement, yet does not bring that breach to the attention of the sentencing court, we review only for plain error.'"  Id. (quoting United States v. Saxena, 229 F.3d 1, 5 (1st Cir. 2000)).  "Thus, we consider whether: (1) there was error, (2) it was plain, (3) the error affected the defendant's substantial rights, and (4) the error adversely impacted the fairness, integrity, or public reputation of judicial proceedings."  Id. (citations omitted).

Here, the government did not technically violate the terms of the plea agreement.  See, e.g., United States v. Frazier, 340 F.3d 5, 11 (1st Cir. 2003) (noting that whether the Government breached the plea agreement is governed by basic contract principles).  Under the plea agreement, the government agreed to recommend a sentence of 33 months, which is what it did.  The plea agreement did not expressly or implicitly preclude the government from proffering additional relevant information to support its recommendation, as it was plainly permitted to do under relevant law.  See, e.g., Rivera-Rodríguez, 489 F.3d at 58 (holding that "the government was free to offer reasons in support of [its] recommendation" at the high-end of the GSR, including that defendant "was a significant supplier of cocaine, and that 'there were quantities frankly beyond the amount stipulated to in the plea agreement'" (cleaned up)); see also 18 U.S.C. § 3661 ("No

- 11 -

limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence.").

Nor did the government violate the spirit of the plea agreement through an "end-run around" its assurances. We have held that, to honor the spirit of a plea agreement, "the prosecution's 'overall conduct must be reasonably consistent' with the promises contained [therein]." Frazier, 340 F.3d at 12 (quoting United States v. Canada, 960 F.2d 263, 269 (1st Cir. 1992)). Although the government need not present its recommendation "with any particular degree of enthusiasm," it cannot merely "pa[y] 'lip service' to the negotiated agreement" or "inject material reservations" about it. Canada, 960 F.2d at 269-70.

Here, the government acted in good faith and adhered to those principles. The government repeatedly stated that it was recommending a sentence of 33 months, as promised, and that nothing it said in argument should be construed otherwise. The government's proffer of additional facts outside the plea agreement did not reduce its ultimate sentencing recommendation to mere "lip service." Rather, its introduction of these facts was in direct response to Rivera's argument that his "transgressions" were "isolated" and to support its recommendation for a 33-month

- 12 -

sentence. Under these circumstances, there was no breach. See Rivera-Rodríguez, 489 F.3d at 58 (no plain error where government proffered facts not in plea agreement "in response to defense counsel's argument" and in support of government's sentencing recommendation). Moreover, the nature of these additional facts -- i.e., that Rivera was widely known to steal money, had associated with corrupt officers, and had beaten arrestees -- were not so inflammatory, as compared to the admitted allegations of his indirect involvement in the broader RICO enterprise, such that they would provide any reason for us to conclude that they poisoned the district court's perception of his character. In any event, the district court repeatedly stated that it would not consider these additional facts in determining Rivera's sentence, and there is no compelling reason to doubt that assurance. Accordingly, we find no breach, under our plain error review.[5]

## B. Procedural Reasonableness

Next, Rivera argues that several aspects of his sentence were procedurally unreasonable. We review preserved challenges to

---

[5] Rivera's reliance on Canada is misplaced. There, the prosecutor never affirmatively requested the sentence that it had agreed to recommend in the plea agreement, among other things. See 960 F.2d at 269-71 (finding a breach where the prosecutor "urg[ed] the court to impose a lengthy sentence within a context suggesting she had in mind something greater than the agreed 36 months" in the plea agreement, e.g., agreeing on the record that she was "stuck with the plea agreement," with a "grudging and apologetic" tone). As we have explained, the circumstances here are markedly different.

a sentencing's procedural reasonableness under "a multifaceted abuse-of-discretion standard whereby we afford de novo review to the sentencing court's interpretation and application of the sentencing guidelines, assay the court's factfinding for clear error, and evaluate its judgment calls for abuse of discretion." United States v. Mendoza-Maisonet, 962 F.3d 1, 20 (1st Cir. 2020) (internal quotes and cites omitted). "The clear-error standard is demanding and will be satisfied only if, 'upon whole-record review, an inquiring court "forms a strong, unyielding belief that a mistake has been made."'" Id. (quoting United States v. Montañez-Quiñones, 911 F.3d 59, 66 (1st Cir. 2018)) (cleaned up). As relevant here, procedural errors include "selecting a sentence based on clearly erroneous facts," United States v. Díaz-Rivera, 957 F.3d 20, 25 (1st Cir. 2020), such as where factual findings are "based solely on unreliable evidence [and therefore] cannot be established by a preponderance" of the evidence, as they must, see United States v. Castillo-Torres, 8 F.4th 68, 71 (1st Cir. 2021).

In his strongest challenge, Rivera contends that the district court erred by relying upon his record of administrative complaints to impose an upwardly variant sentence. He argues that because all but one of the complaints listed in the PSR had been "dismissed" and lacked any description of the underlying circumstances, the district court was not permitted to ascribe

- 14 -

them any weight in fixing his sentence. Acknowledging that we have not before considered the propriety of a sentencing court's reliance on administrative complaints, Rivera analogizes them to bare arrest records. Under our precedent, records of a defendant's prior arrests or criminal charges not resulting in conviction cannot themselves be relied upon at sentencing absent a finding that the underlying misconduct actually occurred. See, e.g., Castillo-Torres, 8 F.4th at 71. The government, in turn, argues that the district court did not *rely* on these complaints, per se, but rather *mentioned* them merely as "historical fact." Alternatively, the government contends that, even if the district court did rely on these complaints, there was no error because the underlying conduct was sufficiently proven.

After careful review, we agree with Rivera that the record does not sufficiently support the district court's exercise of its discretion in relying on certain administrative complaints that lacked any indicia of reliability as to whether the underlying conduct took place.

Our cases make clear that a sentencing court may not rely upon a defendant's prior arrests or unproven charges in fixing a sentence, unless there is proof by a preponderance of the evidence that the defendant engaged in the underlying conduct alleged. See, e.g., id.; United States v. Dávilla-Bonilla, 968 F.3d 1, 9 (1st Cir. 2020); United States v. Colón-Maldonado, 953

F.3d 1, 9-10 (1st Cir. 2020); United States v. Díaz-Lugo, 963 F.3d 145, 153 (1st Cir. 2020); United States v. Rondón-García, 886 F.3d 14, 25-26 (1st Cir. 2018); United States v. Marrero-Pérez, 914 F.3d 20, 22 (1st Cir. 2019); United States v. Cortés-Medina, 819 F.3d 566, 570 (1st Cir. 2016). This rule is derived from the principle that all "factual findings made at sentencing must be supported by a preponderance of the evidence." See Castillo-Torres, 8 F.4th at 71. That is, a sentence must be based on "information [that] has sufficient indicia of reliability to support its probable accuracy." See United States v. Morgan, 384 F.3d 1, 5 (1st Cir. 2004) (quoting United States v. Lopez, 299 F.3d 84, 89 (1st Cir. 2002)); see also United States v. Lombard, 102 F.3d 1, 4 (1st Cir. 1996) ("[T]he district court may . . . choose to give weight to the uncharged offenses in fixing the sentence . . . if it finds by a preponderance of the evidence that they occurred . . . ."). This fundamental precept is not only explicitly set forth in the Guidelines, see U.S.S.G. § 6A1.3(a), but also rooted in due process, see Colón-Maldonado, 953 F.3d at 10, "which guarantees every defendant a 'right to be sentenced upon information which is not false or materially incorrect,'" United States v. Tavano, 12 F.3d 301, 305 (1st Cir. 1993) (quoting United States v. Berzon, 941 F.2d 8, 18 (1st Cir. 1991)). See also United States v. Watts, 519 U.S. 148, 156-57 (1997) (per curiam); Townsend v. Burke, 334 U.S. 736, 741 (1948);

- 16 -

U.S.S.G. § 6A1.3(a) cmt. (reflecting Sentencing Commission's finding that the preponderance standard "is appropriate to meet due process requirements").

Thus, a sentencing court may not rely upon a bare arrest record or mere charges "unsupported by any admission or some other evidence," regardless of whether it does so for the purpose of imposing a within-Guideline sentence, departing above the Guidelines pursuant to U.S.S.G. § 4A1.3(a), or varying above the Guidelines based on the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a).[6] See Castillo-Torres, 8 F.4th at 71; United

_____

[6] To be sure, we have not before expressly decided whether this proscription against reliance on a "bare arrest record" applies in the context of a variant sentence, as it expressly does for an upward departure under U.S.S.G. § 4A1.3(a). See Colón-Maldonado, 953 F.3d at 9 n.8; U.S.S.G. § 4A1.3(a)(3) (providing that "[a] prior arrest record itself shall not be considered for purposes of an upward departure" based upon a defendant's inadequate criminal history category). We conclude that it does. Although the policy statement embodied in § 4A1.3(a)(3) does not apply to variant sentences under 18 U.S.C. § 3553(a), see Díaz-Lugo, 963 F.3d at 153 n.1; United States v. Rodríguez-Reyes, 925 F.3d 558, 564 (1st. Cir. 2019), the due process requirement embodied in U.S.S.G. § 6A1.3(a) is not so limited, Castillo-Torres, 8 F.4th at 71; United States v. Amirault, 224 F.3d 9, 15 (1st Cir. 2000) (stating that "[f]rom the standpoint of due process, a district court properly may consider uncharged conduct at sentencing" only if "that conduct either is admitted or reliably proved by a preponderance of the evidence"). As we recently explained in Castillo-Torres, which dealt with a within-Guideline sentence, the unifying principle in any context is that information used to "form the basis for a longer term of immurement than the court would have [otherwise] imposed" must be sufficiently reliable. See 8 F.4th at 71; see Colón-Maldonado, 953 F.3d at 9 n.8 (noting that the "basic principle" underlying § 4A1.3(a)(3) "equally appl[ies]" to an upward variance: "a bare arrest or charge does not prove the defendant committed the crime"); U.S.S.G.

- 17 -

States v. Aponte-Vellón, 754 F.3d 89, 93 (1st Cir. 2014) (explaining distinction between an upward departure and a variant sentence). Of course, whether particular evidence is sufficiently reliable is within the sentencing court's "wide discretion," see United States v. Rodríguez-Reyes, 925 F.3d 558, 563-64 (1st. Cir. 2019) (quoting United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010)), and the court's factual determinations and reliability findings are subject to clear error review, see Castillo-Torres, 8 F.4th at 71 (citing United States v. Luciano, 414 F.3d 174, 180 (1st Cir. 2005)). "We have made clear that findings based solely on unreliable evidence cannot be established by a preponderance and are therefore clearly erroneous." Id.

Here, we hold that this rule applies even more strongly to the administrative complaints filed against Rivera. Much like a criminal complaint, which "is just an accusation that starts off a criminal case," see Colón-Maldonado, 953 F.3d at 2 (citing P.R.

---

§ 6A1.3(a). There is "no hint" in our precedent that "unsupported allegations" foreclose application of some enhancements, but not others. Castillo-Torres, 8 F.4th at 71. Accordingly, regardless of whether a defendant's prior unlawful conduct is offered to demonstrate his under-represented criminal history score, under § 4A1.3(a), or his history and characteristics, under § 3553(a), it must be proven by a preponderance of the evidence before a court may "infer unlawful behavior" from such conduct to be factored into sentencing. See Colón-Maldonado, 953 F.3d at 9. In either case, a bare arrest record or mere charge does not suffice, without an admission or some other evidence that the underlying conduct more likely than not took place. See, e.g., Marrero-Pérez, 914 F.3d at 23 ("[P]roof only of an arrest is no proof of guilt.").

Laws Ann. tit. 34, Ap. II, §§ 5, 34), the administrative complaints at issue are simply accusations of misconduct that *sometimes* launch an investigation and result in adjudication. And they could have been filed by anyone. See P.R. Regs. Policia Reg. 6506 arts. 4(A), 5 (Aug. 2002), repealed by Reg. 8841 (Nov. 2016); P.R. Regs. Policia Reg. 3742 (Feb. 1989), repealed by Reg. 6506 (Aug. 2002); see also supra note 4. As would generally be the case with an arrest or criminal charge, the complaints were only relevant to the district court's analysis of Rivera's history and characteristics if the underlying misconduct more likely than not took place. See, e.g., Marrero-Pérez, 914 F.3d at 23 (reiterating warning that bare "reliance on arrests" may not serve "as a proxy for criminal culpability or the likelihood of recidivism"). The risk that an unadjudicated accusation could be unreliable remains constant regardless of the process under which it was alleged. See Castillo-Torres, 8 F.4th at 71-72 (analogizing a criminal complaint to an arrest record). That risk is even more pronounced where, as here, there is no presumption that the charges were at least supported by probable cause. In any event, for the district court to rely upon and "infer unlawful behavior" from these complaints, the government must show by a preponderance of the evidence that the underlying misconduct occurred. See Colón-Maldonado, 953 F.3d at 9-10; Rondón-García, 886 F.3d at 25.

We also conclude that the district court relied upon Rivera's administrative complaints in making its sentencing determination. In considering the § 3553(a) factors, the district court explicitly referenced Rivera's multiple "administrative complaints," including "a complaint for threats with firearms [and] several counts of illegal searches," thereby tying them to its consideration of Rivera's history and characteristics. See 18 U.S.C. § 3553(a)(1). The court particularly focused on the "complaints for the year 2013," of which there were two, noting that "many of those involved and were related to illegal searches." It then "point[ed] to the resemblance of [that] conduct" to the conduct underlying Rivera's RICO conviction, plainly implying that Rivera was some kind of repeat offender. This makes sense, after all, as one would expect such information to be given some weight if it could be shown that Rivera more likely than not abused his authority prior to his commission of a comparable offense of conviction. See Castillo-Torres, 8 F.4th at 73; Marrero-Pérez, 914 F.3d at 23 (noting that "recidivist behavior" is a "proper consideration[] at sentencing"); see also Rodríguez-Reyes, 925 F.3d at 566 (same). While we note that the court conscientiously stated that it was "not making any conclusory determinations as to" Rivera's culpability for the accused conduct, we are unable to square that non sequitur with the record as a whole. Any comparison between the administrative complaints and Rivera's RICO

violation was only valid to the extent Rivera more likely than not engaged in the misconduct precipitating the complaints.

Although we have stated, often in dicta and under plain error review, that a sentencing court is not forbidden from "mere[ly] mention[ing]" a defendant's arrest record or dismissed charges "as a matter of historical fact, without more," see, e.g., United States v. Santa-Soler, 985 F.3d 93, 96-97 (1st Cir. 2021) (citing Díaz-Lugo, 963 F.3d at 153), or "as part of a broader assessment of the defendant's troubling trajectory [of] serial encounters with the criminal justice system," see, e.g., United States v. Miranda-Díaz, 942 F.3d 33, 41 (1st Cir. 2019) (citing Rodríguez-Reyes, 925 F.3d at 564 n.4), that is not what happened here. In this case, there was plainly "more." As discussed above, the district court's treatment of Rivera's administrative complaints exceeded the type of "passing reference" or "brief recitation of procedural facts," see Díaz-Rivera, 957 F.3d at 27, that we have determined incurs no error. Cf. United States v. Quiles-Lopez, 985 F.3d 89, 91-92 (1st Cir. 2021) (no error in making "single reference" to arrests in context of reciting criminal history); Santa-Soler, 985 F.3d at 97 (no error in merely reciting arrest record and stating that arrests were "not considered for the sentence"); Díaz-Lugo, 963 F.3d at 153-54 (no error in "passing reference" to uncharged arrest "while constructing a chronology of the [defendant's] criminal history,"

where "[a]s quickly as the court referred to the arrest, it completed its recital . . . and then moved on to a detailed discussion of the section 3553(a) factors"). The court's comparison of the illegal searches to Rivera's RICO conviction, within the context of discussing the § 3553(a) factors, makes this distinction clear. Cf. United States v. Vélez-Andino, 12 F.4th 105, 113 (1st Cir. 2021) (no abuse of discretion where court did not specifically cite dismissed charges in discussing § 3553(a) factors and defendant's "utter disregard for the law," focusing instead on his several convictions).

Having determined that the district court relied upon Rivera's record of administrative complaints, we review for clear error whether its reliance was sufficiently supported. See Castillo-Torres, 8 F.4th at 71. With respect to the court's discussion of the 2013 illegal-search complaint for which Rivera was ultimately suspended, we find no error. The PSR provided sufficient detail about the circumstances surrounding the warrantless search and Rivera's specific violations to enable the court to determine what likely happened. More importantly, the PSR disclosed that Rivera admittedly lied about the circumstances surrounding the search and that he was determined to be at fault for "making false statements" and conducting an illegal search. Rivera did not object to the PSR's description of these events or his resulting suspension. "A sentencing court can indeed rely on

- 22 -

the undisputed information contained in the PSR at sentencing as 'generally, a PSR bears sufficient indicia of reliability.'" Díaz-Rivera, 957 F.3d at 27 (quoting Rondón-García, 886 F.3d at 25). Thus, the district court acted within its discretion in relying upon the 2013 illegal search complaint because the record supported a finding that the underlying conduct more likely than not occurred. Cf. Dávilla-Bonilla, 968 F.3d at 9-10 (no abuse of discretion in court's reliance on dismissed domestic violence charges where PSR contained defendant's admission that he committed "prior domestic violence offenses"); Rodríguez-Reyes, 925 F.3d at 565 (finding that PSR's unobjected-to discussion of defendant's drug use provided sufficient indicia of reliability that defendant committed the conduct initiating his prior drug possession arrests); see also United States v. Tabares, 951 F.2d 405, 411 (1st Cir. 1991) (finding no error in sentencing court's reliance on dismissed charges where "[t]here [was] no reason . . . to doubt that these acts occurred," given defendant's "failure to contest the facts" provided in the PSR).

By contrast, the allegations underlying the remaining complaints, as repeated in the PSR, were merely "uncorroborated, unsworn hearsay with no other marks of reliability." Castillo-Torres, 8 F.4th at 72 (quoting Colón-Maldonado, 953 F.3d at 12). As discussed above, the PSR merely provided the alleged offense underlying these complaints, their date, and that their

"circumstances . . . remain unknown." This included a 1994 complaint for "threats with a duty firearm" and two additional complaints for "illegal search," from 2007 and 2013, respectively -- all of which the district court expressly mentioned in its § 3553(a) discussion. The PSR also disclosed that Rivera had been exonerated for a 2015 complaint for an illegal search. Unlike the 2013 illegal search discussed above, there is no further detail about the events precipitating these other complaints, the alleged violations, or any final determinations.[7] The record of these complaints is similar to, if not less reliable than, a bare arrest record or criminal charge. By themselves, the complaints lack sufficient indicia of reliability to support a finding that Rivera more likely than not committed the alleged conduct. See, e.g., id. at 71; Colón-Maldonado, 953 F.3d at 13; Dávilla-Bonilla, 968 F.3d at 9-10. And the record reveals no other evidence that could have reasonably buttressed their reliability. The district

---

[7] Rivera contends that these complaints were "dismissed," but the record is unclear on their specific dispositions. In any event, the PSR provides no information to suggest that these complaints were disposed of based on anything other than their lack of merit. See, e.g., Rondón-García, 886 F.3d at 26 ("A court . . . cannot simply presume that past charges resolved without conviction are attributable to flawed or lax prosecutorial or judicial systems rather than the defendant's innocence." (citation omitted, cleaned up, and new alteration added)). Cf. Rodríguez-Reyes, 925 F.3d at 566 (finding no error in court's reliance on dismissed and expunged charges where uncontested PSR charges were disposed not because of "any finding on the merits of the case[s], but for other reasons" (internal cites and quotes omitted, alteration in original)).

court's broad reference to the multiple "complaints," including the "several counts of illegal searches" necessarily drew upon these unsupported accusations. Thus, the district court's finding that the conduct underlying Rivera's multiple unadjudicated "complaints" for illegal searches "resemb[led] or was "similar to" his RICO conduct was clearly erroneous.[8] See Castillo-Torres, 8 F.4th at 71 ("[F]indings based solely on unreliable evidence cannot be established by a preponderance and are therefore clearly erroneous.").

Finally, based on this record, we cannot conclude that the district court's error was harmless, i.e., that it "did not affect the . . . selection of the sentence imposed." Id. at 73 (quoting United States v. Tavares, 705 F.3d 4, 26-27 (1st Cir. 2013)) (alterations in original). Although the district court paid particular focus to the one 2013 complaint for the sufficiently-supported illegal search, it discussed that complaint together with the second illegal-search complaint filed in 2013 for which there was no further detail or findings, noting that "many of" the 2013 complaints "involved and were related to illegal searches." Elsewhere in its discussion, the district court alluded to the larger administrative record in the collective -- e.g.,

---

[8] We reject the government's argument that Rivera's instant racketeering conviction for events transpiring between 2014 and 2018 somehow provides evidence of seemingly unrelated illegal searches alleged to have occurred years before.

"[t]his defendant has some administrative complaints," including "several counts of illegal searches" -- and gratuitously noted Rivera's "complaint for threats with firearms."  Thus, we cannot say that the sole complaint that was properly considered would have necessarily resulted in and justified the sentence imposed, without the benefit of further explanation.  One could reasonably view any number of prior administrative sanctions related to abuse of authority to be relevant sentencing factors in a case such as this.  But the weight to be given such instances at sentencing will necessarily depend upon their frequency and severity, and we believe a more detailed explanation as to any comparison was warranted.  See, e.g., Díaz-Lugo, 963 F.3d at 156 ("The extent of the explanation must be commensurate with the extent of the variance.").  Similarly, a court may reasonably find that a corrupt official's criminal history category is underrepresented due to his "[p]rior similar misconduct established by a civil adjudication," U.S.S.G. § 4A1.3(a)(2)(C), but the extent of this inadequacy and the corresponding sentencing departure will depend upon those same considerations and must be adequately explained. See United States v. Wallace, 461 F.3d 15, 44 (1st Cir. 2006).

To be sure, there was ample other evidence relevant to sentencing.  The district court's own statements make clear that it placed substantial weight on the "blatant" and damaging nature of Rivera's offense, which it determined betrayed his oath of

- 26 -

office and undermined the integrity of the local criminal justice system. But we note that these considerations were already reflected in Rivera's GSR, at least partially, by way of the two-level enhancement for abuse of position of public trust. See U.S.S.G. § 3B1.3. As we have previously held, a substantial variance -- such as the 60-month sentence imposed here, which doubled the midpoint of the GSR -- must be supported by a commensurately extensive explanation. See, e.g., Díaz-Lugo, 963 F.3d at 156; United States v. Martin, 520 F.3d 87, 91 (1st Cir. 2008); United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006). Similarly, "[w]hen a factor is already included in the [GSR], a judge who wishes to rely on that same factor to impose a sentence above or below the range must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the guideline calculation." United States v. Zapete-Garcia, 447 F.3d 57, 60 (1st Cir. 2006). Here, however, the district court did not articulate any specific reasons that Rivera's conduct exceeded that ordinarily envisioned by the enhancement. We conclude that, without the impermissible inference drawn from Rivera's lengthy record of administrative complaints, the district court's explanation for the sentence is substantially weakened to the point that we cannot deem this error to be harmless.

## III. CONCLUSION

For the reasons stated above, we **VACATE** Rivera's sentence and **REMAND** for resentencing consistent with this opinion.[9]

---

[9] In light of our holding that the district court went beyond its permissible discretion in relying upon certain of Rivera's prior administrative complaints, we need not consider Rivera's other claims of procedural and substantive unreasonableness. Additionally, having found no breach of the plea agreement, we need not consider Rivera's request for resentencing by a different judge, as Rivera perfunctorily requests in connection with that challenge alone.