# United States Court of Appeals
## For the First Circuit

No. 21-1599

UNITED STATES OF AMERICA,

Appellee,

v.

MARIO RAFAEL CASTILLO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Montecalvo and Aframe, Circuit Judges.

Alejandra Bird-López, Research and Writing Specialist, with whom Eric Alexander Vos, Federal Public Defender, and Franco L. Pérez-Redondo, Assistant Federal Public Defender, were on brief, for appellant.

Natasha K. Harnwell-Davis, Attorney, Appellate Section, Criminal Division, United States Department of Justice, with whom W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Austin Berry, Trial Attorney, Child Exploitation and Obscenity Section, Kenneth A. Polite, Jr., Assistant Attorney General, and Lisa H. Miller, Deputy Assistant Attorney General, were on brief, for appellee.

January 28, 2025

**AFRAME, Circuit Judge**. For the second time, defendant-appellant Mario Rafael Castillo appeals a 235-month sentence imposed for engaging in abusive sexual conduct towards a minor under the age of twelve. See 18 U.S.C. § 2244(a)(5). In the earlier appeal, we vacated the sentence because the district court committed a procedural error by incorrectly applying a sentencing guidelines cross-reference, U.S.S.G. § 2A3.4(c)(1), which increased the bottom of the advisory guideline range from 63 months to 235 months of imprisonment. See United States v. Castillo, 981 F.3d 94 (1st Cir. 2020).

On remand, the district court acknowledged the applicable lower guideline range but nevertheless imposed the same 235-month sentence. In this appeal, Castillo argues that we should again vacate the sentence because the prosecutor breached the plea agreement by giving only "lip service" to the government's promise to recommend up to a 180-month sentence. We agree and thus vacate the sentence and remand for further proceedings.

## I.

We begin with an overview of the factual and procedural backdrop, which we source from the "Joint Factual Basis" filed by the parties in connection with the plea agreement, the plea agreement itself, and the transcripts from the two sentencing hearings. See United States v. Brown, 31 F.4th 39, 42 (1st Cir. 2022).

- 2 -

From August 2011 through August 2014, Castillo lived with his son, daughter-in-law, and two granddaughters, both of whom were under twelve years old, on a United States military base in Germany where his son was stationed. While residing with his son and his son's family, Castillo sexually abused his granddaughters. On one occasion, Castillo pulled down his older granddaughter's pants and underwear and "licked the outside" of her genitalia. On two other occasions, Castillo tried to pull down this same granddaughter's pants but could not do so because the granddaughter began wearing tight belts after the just-described incident. Castillo also abused his younger granddaughter during the same period by touching her inner thigh in a sexual manner.

Castillo was charged with one count of aggravated sexual abuse of a child under the age of twelve for his actions towards his older granddaughter, see 18 U.S.C. §§ 2241(c), 3261(a)(1), and one count of abusive sexual contact of a child under the age of twelve for his actions towards his younger granddaughter, see 18 U.S.C. §§ 2244(a)(5), 3261(a)(1). Despite admitting to facts pertaining to both granddaughters, Castillo pleaded guilty only to the second count relating to his younger granddaughter.[1] That

---

[1] The government dismissed the count charging the conduct relating to the older granddaughter.

offense was punishable by "any term of years [of imprisonment] or for life."  18 U.S.C. § 2244(a)(5).

The plea agreement included two separate advisory guideline calculations.  The first, proposed by the government, applied the criminal sexual abuse cross-reference that was the subject of the defendant's first appeal, see Castillo, 981 F.3d at 97-98, to arrive at a total offense level of thirty-eight. Applying a criminal history category of I, this calculation yielded a guideline range of 235 to 293 months of imprisonment.  The second, offered by Castillo, did not apply the contested cross-reference and thus proposed a lower guideline range of sixty-three to seventy-eight months based on a total offense level of twenty-six and a criminal history category of I.  Though the parties disputed the applicable guideline range, they stipulated in the plea agreement that Castillo could seek a sentence of 78 months, and the government could argue for a sentence of "up to 180 months."

At the initial sentencing, the district court agreed with the government's guideline calculation.  It then declined to adopt either the 78-month sentence requested by Castillo or the 180-month sentence requested by the government, reasoning that, based on the 18 U.S.C. § 3553(a) sentencing factors, including the need to promote respect for the law and public protection, "neither sentence recommendation [was] . . . just and not greater than

necessary in this case." Instead, the court imposed a 235-month sentence.

As noted, Castillo appealed the sentence, and we held that the sexual abuse cross-reference did not apply. Castillo, 981 F.3d at 106-07. Following remand, Castillo again requested a seventy-eight-month sentence. This request was consistent with the terms of the plea agreement and at the top of the now-undisputed guideline range of sixty-three to seventy-eight months.

Acknowledging the seriousness of the offense and the district court's authority to sentence him above the guideline range, Castillo asked for a more lenient sentence given (1) his advanced age (he was seventy-two years old at the time of his second sentencing); (2) his previous struggles in prison; (3) his low likelihood of recidivism given his age and minimal criminal history; and (4) the fact that he would be deported after completing his sentence. Castillo argued that, given his age, 235 months of imprisonment would be "potentially a life sentence" and "excessively harsh."

The prosecutor first responded to Castillo's age-related arguments. Then, without any inquiries from the district court about the relevant facts, the applicable law, or Castillo's sentencing argument, he stated that he wanted to "make clear" that he was "bound by the plea agreement" to refrain from "ask[ing] for

- 5 -

more than 180 months."  The prosecutor stressed, however, that the plea agreement "did not bind the [district c]ourt," which was "free to sentence anywhere it want[ed]."  He also emphasized that there was no limit on the sentence that could be requested by the victim and her family.

The prosecutor later reminded the district court that it had rejected as too lenient the parties' recommendations at the earlier sentencing.  And he stated that the "[c]ourt['s] sentence, whatever it is, can aptly be supported by the facts and arguments that the United States made in its sentencing memorandum filed in 2018."

The prosecutor also cast Castillo as a near-certain recidivist for whom a long sentence -- if not effectively a life sentence -- was necessary to protect the public.  The prosecutor first made such comments in response to Castillo's request for leniency on the ground that he would be deported after completing his sentence.  The prosecutor stated that he was

> a little bit worried about the idea of a sentence where [Castillo] could get out of prison and get deported, because, yes . . . [in] America, we don't have to deal with him anymore, but as a person of the world, as a citizen of the world, as Your Honor is, . . . I don't take any comfort in the idea of us offloading a guy with a severe sexual interest in children to a country like the Dominican Republic.  I am very fearful for the children in that country.

Later, the prosecutor stated that "[w]hen [Castillo] has the opportunity, . . . it does not matter what his age is, he will sexually offend against children.  He is attracted to [children], and he is going to act on his attraction whenever the opportunities appear."

Castillo objected to the prosecutor's sentencing argument on the ground that it amounted to a breach of the plea agreement.  He contended that the prosecutor was attempting "an end run" around the government's formal recommendation of 180 months, explaining: "[The prosecutor] says 180, but then he is basically playing [sic] lip service to it because he is telling you [that] your original sentence is fine, you can do whatever you want, . . . and all of the evidence justifies [the previously-imposed] sentence . . . ."

In response, the prosecutor did not endorse the 180-month sentence as required by the plea agreement; rather, he reiterated that he was only "permitted" to argue for a sentence of 180 months.  And he stated that the district court remained "free and legally unimpeded to sentence [Castillo] to whatever [the court] wants between probation and life."  The prosecutor observed that this "was true [at the prior sentencing], [and] it is true today."  To that end, he noted that this Court "did not reprimand" the district court by stating that the 235-month sentence "was an unreasonable sentence. . . [or] too harsh a

sentence" but rather vacated the first sentence because of a "procedural error that has nothing to do with the running room that [the district court] has to sentence." The district court then heard testimony from the victims. Only then, after the court directly asked the prosecutor for his sentencing recommendation, did the prosecutor affirmatively state that the "United States recommends a sentence of 180 months."

The district court ultimately reimposed the 235-month sentence, a 157-month upward variance from the top of the advisory guideline range. It stated that the sentence was warranted because "[t]he lifelong impact that [Castillo's] acts have caused [his] granddaughter cannot possibly be measured." The court continued: "The abuse is traumatic and is greatly compounded by the fact that it was at the hands [of the victim's] own grandfather who was with [his granddaughters] to take care of them." Castillo again appealed.

## II.

Castillo argues in this Court, as he did below, that we should vacate the sentence because the prosecutor breached the plea agreement. He contends that the prosecutor's statements were "not made in response to any question posed or comment made by the court," and "constitute[d] an invitation to impose a 235-month sentence," which was "higher than [the government] agreed to recommend per the plea agreement." Because Castillo objected in

the district court on this same basis, we review his claim de novo.  Brown, 31 F.4th at 50.

Pleading guilty requires a defendant to waive fundamental constitutional rights associated with a trial.  United States v. Clark, 55 F.3d 9, 12 (1st Cir. 1995).  Waiving these rights is "a weighty decision for [any] defendant."  United States v. Acevedo-Osorio, 118 F.4th 117, 127 (1st Cir. 2024).  "[T]o protect defendants from forsaking their fundamental trial rights in exchange for empty promises" and to encourage "faith in the plea-bargaining process, 'we "hold prosecutors to the most meticulous standards of promise and performance"'" in the execution of plea agreements.  Id. (quoting Brown, 31 F.4th at 50).

In evaluating whether a prosecutor acted in accord with a plea agreement, we are guided by "[t]raditional principles of contract law."  Brown, 31 F.4th at 50.  Accordingly, "technical compliance" with a plea agreement's terms does not suffice where "the prosecutor's actions may implicitly 'undercut' the deal."  Acevedo-Osorio, 118 F.4th at 128 (quoting United States v. Almonte-Nuñez, 771 F.3d 84, 89, 90 (1st Cir. 2014)).  Such conduct does not accord with the "implied obligation of good faith and fair dealing" that accompanies all contracts.  Id. (quoting United States v. Frazier, 340 F.3d 5, 11 (1st Cir. 2003)).  For this reason, prosecutors breach a plea agreement when they pay only

"lip service" to essential terms by "reaffirm[ing] a promise to the defendant out of one side of [the] mouth" while simultaneously "tr[ying] to subvert it out of the other side."  Almonte-Nuñez, 771 F.3d at 91.

There is "[n]o magic formula" to determine whether a prosecutor engaged in impermissible "lip service" or permissible sentencing advocacy.  United States v. Gonczy, 357 F.3d 50, 54 (1st Cir. 2004).  We examine "the totality of the circumstances" to ascertain whether "the net effect of the government's behavior" was to "undermine[] the benefit of the bargain."  United States v. Cortés-López, 101 F.4th 120, 128 (1st Cir. 2024) (quoting Frazier, 340 F.3d at 10).  In conducting this examination, we recognize that the government "is not obliged to present an agreed[-upon] recommendation . . . with ruffles and flourishes."  Id. (quoting United States v. Montañez-Quiñones, 911 F.3d 59, 65 (1st Cir. 2018)).  Nor do we require "any particular degree of enthusiasm" for the recommendation.  Id. (quoting United States v. Canada, 960 F.2d 263, 270 (1st Cir. 1992)).  We have been clear, however, that it is impermissible for the prosecutor "to inject material reservations" about the government's promise or otherwise make "end-runs around" the agreement.  Id. at 128-29 (first quoting Canada, 960 F.2d at 270; and then quoting Frazier, 340 F.3d at 10).

- 10 -

While, as just mentioned, we have no "magic formula" for determining when a prosecutor improperly provides only lip service to a plea-agreement promise, identifying the context in which the prosecutor made the contested argument is an essential ingredient to the analysis. Because context is key, we have declined to find breach where a prosecutor's comments come at the "court's urging" or "in direct response to defense counsel's attempt to put an innocent gloss" on relevant facts. United States v. Saxena, 229 F.3d 1, 7 (1st Cir. 2000). But we have cautioned that when a prosecutor "gratuitously offers added detail garbed in implicit advocacy, a court might well find that the prosecutor is actually seeking a result in a manner that breaches the agreement." United States v. Miranda-Martinez, 790 F.3d 270, 275 (1st Cir. 2015); see also Cortés-López, 101 F.4th at 129, 132 (finding breach based on "the government's unsolicited statement" made "sua sponte").

Here, we identify three important contextual facts before turning to the propriety of the prosecutor's sentencing argument. First, the prosecutor's initial argument was not in response to any questions from the district court about the underlying facts, the pending legal issues, or Castillo's argument. Second, in Castillo's sentencing argument, which came before the prosecutor's, Castillo acknowledged the court's power to sentence him above the applicable sixty-three to

seventy-eight-month guideline range. Thus, there was no dispute about the district court's sentencing authority when the prosecutor spoke. Third, the sentencing hearing occurred after the district court had previously imposed a 235-month sentence based on the § 3553(a) sentencing factors. Accordingly, the court already had once imposed a sentence above the government's promised recommendation. That fact, however, does not change the government's obligation to honor its agreement in a way that was "not impermissibly equivocal, apologetic, or begrudging." United States v. Davis, 923 F.3d 228, 239 (1st Cir. 2019).

With that context in mind, we turn to the prosecutor's argument. We acknowledge that the prosecutor complied with the letter of the plea agreement by stating that "the United States recommends a sentence of 180 months" and that he was "not asking for anything above 180 months." But technical compliance is not enough. United States v. Marín-Echeverri, 846 F.3d 473, 478 (1st Cir. 2017) ("[I]n assessing compliance with a plea agreement, we frown on technical compliance that undercuts the substance of the deal."). The prosecutor undermined his formal recommendation with several statements suggesting that he regretted the government's promise and favored reimposition of the 235-month sentence.

In this regard, after stating that it was of "no moment" that the sentence imposed might result in Castillo "dying in prison," the prosecutor twice stated that he was "bound by the

plea agreement" and therefore could not "ask for more than 180 months." He later reiterated that he was "permitted" to argue for only 180 months. These comments, given their unprompted nature, suggest that the prosecutor wanted the court to impose a longer sentence but was restricted from explicitly requesting one by the parties' prior agreement.

Throughout the hearing, the prosecutor repeatedly and without prompting emphasized the district court's authority to impose a harsher sentence than the government's recommendation, the victim's right to request a higher sentence, and the justification for such a sentence:

- "We were bound by [the plea agreement], but we did not bind the [c]ourt in any kind of agreement, and the [c]ourt is free to sentence anywhere it wants, and the victims are free to argue for anything that they want [] as well."

- "Your Honor stated [at the first sentencing] that [the court] had considered all of the other sentencing factors . . . and that neither sentence recommendation . . . was just[,] . . . [which] resulted in . . . the sentence that you imposed at that time."

- "This [c]ourt['s] sentence, whatever it is, can aptly be supported by the facts and arguments that the United States made in its sentencing memorandum filed in 2018."

- "Your Honor is still free and legally unimpeded to sentence to whatever he wants between probation and life. That was true [at the first sentencing], it is true today."

- "The First Circuit Court of Appeals did not reprimand Your Honor and say this was an

> unreasonable sentence . . . or that it was too
> harsh a sentence . . . ."

- "We are here on a procedural error that has nothing to do with the running room that Your Honor has to sentence."

In addition, the prosecutor made multiple statements suggesting that public safety requires Castillo to never leave prison. He told the court that he was "worried about the idea of a sentence where [Castillo] could get out of prison and get deported" because he was "very fearful for the children" in the Dominican Republic, Castillo's home country. He also stated that, regardless of his age, Castillo "will sexually offend against children [because] [h]e is attracted to them, and he is going to act on his attraction whenever the opportunities appear."

In our view, the prosecutor's sentencing presentation constitutes a clear example of paying lip service to the plea agreement while giving a wink and nod to the imposition of a harsher sentence. See Gonczy, 357 F.3d at 54. Even though Castillo had already acknowledged the district court's ability to upwardly vary from the guideline recommendation, the prosecutor emphasized (1) the district court's authority to sentence Castillo more harshly than the government's formal recommendation; (2) that regardless of the government's recommendation, the victim and her family could lawfully request a sentence above 180 months; (3) that in the first appeal, this Court had not criticized the initial

- 14 -

235-month sentence as being "too harsh"; and (4) that Castillo's conduct was severe enough to support whatever sentence the district court selected. Added to this mix, the prosecutor remarked that he was "fearful for the children" should the defendant ever be released from prison and that Castillo was "going to act on his [sexual] attraction [to children] whenever the opportunities appear."

These comments leave the unmistakable impression that the prosecutor wanted the district court to impose a sentence longer than 180 months. The prosecutor made clear that the court had the power to impose such a sentence again, the victim and her family favored such a sentence, and the court would be justified in so sentencing. That was not the government's promise. This case thus presents an instance of a prosecutor "reaffirm[ing] a promise to the defendant out of one side of [his] mouth" while simultaneously "tr[ying] to subvert it out of the other side." Almonte-Nuñez, 771 F.3d at 91; see Gonczy, 357 F.3d at 54 (concluding that the plea agreement was breached where the prosecutor's "initial recommendation . . . was undercut, if not eviscerated, by [her] substantive argument to the district court").

The government contends otherwise. It says that the prosecutor's comments about the district court's power to impose an above-guidelines sentence were necessary to support the

180-month recommendation since that recommendation was itself above the advisory guideline range of sixty-three to seventy-eight months. But, as we have already explained, the court's power was undisputed given Castillo's recognition that the court could impose "an upward variance" from the guideline range. Nevertheless, the prosecutor emphasized the court's authority to sentence "anywhere it wants" almost every time he referenced the 180-month sentence without once mentioning the advisory guideline range. Thus, the prosecutor's reference to the court's sentencing authority was the proverbial wink towards a sentence exceeding 180 months, not an argument for exceeding the top of the guideline range.

The government also defends the prosecutor's emphasis on the fact that this Court did not rule that the 235-month sentence was substantively unreasonable in resolving the first appeal. Specifically, the government contends the prosecutor was only satisfying its duty to furnish the district court with "relevant information" since the contours of this Court's remand were relevant to the resentencing. See Frazier, 340 F.3d at 12-13.

But the district court did not ask any questions about this Court's earlier decision and the prosecutor mentioned the decision only in response to Castillo's breach-of-the-plea-agreement argument. The prosecutor emphasized the life-sentence maximum and then highlighted that this Court had

not "reprimand[ed]" the district court's imposition of a 235-month sentence for being "too harsh." Given the government's agreement to recommend a 180-month sentence, this argument was out of bounds.

The government further contends that the prosecutor's statements regarding Castillo's likelihood of reoffending were merely a response to Castillo's argument for age-based leniency, and thus supported the prosecutor's 180-month recommendation. In context, we disagree. The prosecutor expressed concern "about the idea of a sentence where [Castillo] would get out of prison and get deported" and stated that it was of "no moment" whether Castillo would die in prison without reference to the 180-month sentence the government promised to recommend. He further stated that "if given the opportunity, <u>it does not matter what [Castillo's] age is</u>, he will sexually offend against children."

Finally, the government says that the prosecutor never endorsed a 235-month sentence. That is true. But our caselaw permits a successful breach claim where a prosecutor pays mere "lip service" to a plea-agreement promise. <u>See, e.g.</u>, <u>Gonczy</u>, 357 F.3d at 54. For the reasons explained above, the prosecutor suggested that the district court reimpose the same 235-month sentence without explicitly saying so. Thus, this is a circumstance where the "prosecutor . . . undercut a plea agreement

while paying lip service to its covenants." Almonte-Nuñez, 771 F.3d at 90-91.[2]

## III.

Based on the prosecutor's breach, Castillo requests that we remand for resentencing before another judge. That is an appropriate remedy in these circumstances. See Clark, 55 F.3d at 15. We therefore **vacate** the defendant's sentence and **remand** for further proceedings consistent with this opinion before a different judge.[3]

In reaching this result, we recognize and do not minimize the difficulty that a second remand -- and third sentencing hearing -- will likely impose on the victims and their family in this case, who have now testified in two separate sentencing proceedings. But we emphasize that it is precisely out of concern for such hardship -- in addition to a defendant's constitutional

---

[2] The government also tells us that the cases cited by the defendant, Canada, 960 F.2d at 269, and Gonczy, 357 F.3d at 54, are distinguishable. But that means little when the "lip-service" analysis is so context-specific. As we explain above, the record demonstrates that the prosecutor tipped his cap to the reimposition of a 235-month sentence despite the government's promise to recommend no more than 180 months.

[3] Because of our disposition, we do not reach Castillo's additional claims of error, including whether the sentence imposed is otherwise procedurally or substantively reasonable.

rights -- that prosecutors who enter into plea agreements must fastidiously uphold their end of the bargain.

**So ordered**.